IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| COREY ARREDONDO<br>748 Longmeadow Lane, Apt. F<br>Findlay, Ohio 45840 | )<br>)<br>)<br>) | CASE NO.<br><br>JUDGE: |
| Plaintiff, | )<br>) | |
| v. | )<br>) | **COMPLAINT FOR DAMAGES**<br>**AND REINSTATEMENT** |
| BEER BARREL, INC.<br>900 Interstate Drive<br>Findlay, Ohio 45840 | )<br>)<br>)<br>) | **JURY DEMAND ENDORSED**<br>**HEREIN** |
| **Serve also:**<br>Beer Barrel, Inc.<br>c/o John Heaphy<br>1860 South Dixie Highway<br>Lima, Ohio 45804 | )<br>)<br>)<br>)<br>)<br>) | |
| -and- | )<br>) | |
| KRISTEN SWIHART<br>c/o Beer Barrel, Inc.<br>900 Interstate Drive<br>Findlay, Ohio 45840 | )<br>)<br>)<br>) | |
| -and- | )<br>) | |
| JIM FOWLER<br>c/o Beer Barrel, Inc.<br>900 Interstate Drive<br>Findlay, Ohio 45840 | )<br>)<br>)<br>) | |
| **Serve also:**<br>Jim Fowler<br>9144 Nancy Lane<br>Findlay, Ohio 45840 | )<br>)<br>)<br>) | |
| Defendants. | ) | |

Plaintiff, Corey Arredondo, by and through undersigned counsel, as his Complaint against the Defendants, states and avers the following:

**PARTIES AND VENUE**

1. Arredondo is a resident of the city of Findlay, county of Hancock, state of Ohio.

2. Beer Barrel, Inc. is a domestic corporation that operates a business located at 900 Interstate Drive, Findlay, Ohio 45840.

3. Upon information and belief, Kristen Swihart is a resident of the state of Ohio.

4. Swihart was at all times hereinafter mentioned, an individual who was a manager and/or supervisor at Beer Barrel who acted directly or indirectly in the interest of Beer Barrel.

5. Swihart was at all times hereinafter mentioned an employer within the meaning of R.C. § 4112.01 *et seq*.

6. Swihart made and/or participated in the adverse actions asserted herein.

7. Upon information and belief, Jim Fowler is a resident of the state of Ohio.

8. Fowler was at all times hereinafter mentioned, an individual who was a manager and/or supervisor at Beer Barrel who acted directly or indirectly in the interest of Beer Barrel.

9. Fowler was at all times hereinafter mentioned an employer within the meaning of R.C. § 4112.01 *et seq*.

10. Fowler made and/or participated in the adverse actions asserted herein.

**JURISDICTION & VENUE**

11. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Arredondo is alleging a Federal Law Claim under the Civil Rights Act of 1964, 42 U.S.C. 2000e-2.

12. All material events alleged in this Complaint occurred in county of Hancock.

13. This Court has supplemental jurisdiction over Arredondo's state law claims pursuant to 28 U.S.C. § 1367 as Arredondo's state law claims are so closely related to his federal law claims

that they form part of the same case or controversy under Article III of the United States Constitution.

14. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

15. Within 300 days of the conduct alleged below, Arredondo filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 471-2021-00420 against Beer Barrel.

16. On or about February 26, 2021 the EEOC issued and mailed a Notice of Right to Sue letter to Arredondo regarding the Charges of Discrimination brought by Arredondo against Beer Barrel.

17. Arredondo received his Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1) - which has been attached hereto as Plaintiff's Exhibit A.

18. Arredondo has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

19. Arredondo has properly exhausted his administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

## FACTS

20. Arredondo is a former employee of Beer Barrel.

21. Arredondo is Hispanic.

22. Beer Barrel initially employed Arredondo as a dishwasher.

23. Beer Barrel hired Arredondo on or about July 7, 2019.

24. In or around January 2020, Arredondo learned of a drug deal that occurred during work hours involving Beer Barrel employees (hereinafter, "Drug Deal").

25. The Drug Deal involved two Caucasian employees and an African American employee.

26. Beer Barrel became aware of the Drug Deal.

27. Beer Barrel terminated the employment of the African American employee involved in the Drug Deal.

28. Beer Barrel did not terminate the employment of the Caucasian employees involved in the Drug Deal.

29. Arredondo discussed with others at work that he believed it was unfair to terminate the African American employee and not terminate or discipline the Caucasian employees.

30. Arredondo discussed with others at work that he believed Beer Barrel did not terminate the Caucasian employees involved in the Drug Deal because of their race.

31. The Caucasian employees involved in the Drug Deal learned that Arredondo made complaints that they were not disciplined as a result of the Drug Deal, and began harassing Arredondo in retaliation.

32. The retaliatory harassment as a result of Arredondo's complaints that the Caucasian individuals had not been disciplined as a result of the Drug Deal included Arredondo receiving an anonymous phone call threatening Arredondo that if he did not stop "bullying" the Caucasian individuals, that he would regret it.

33. Arredondo complained to Beer Barrel about the retaliatory harassment he received from the Caucasian employees.

34. Upon information and belief, Defendants have a policy requiring investigations following receipt of a complaint of discrimination.

35. An investigation should include interviewing the complainant.

36. An investigation should include interviewing the subject of the complaint.

37. An investigation should include interviewing the subject of the reported incident.

38. An investigation should include interviewing witnesses to the reported incident.

39. An investigation should include getting a written statement from the complainant.

40. An investigation should include getting a written statement from the subject of the complaint.

41. An investigation should include getting a written statement from the subject of the reported incident.

42. In response to Arredondo's complaint of discriminatory conduct, Defendants did not interview Arredondo.

43. In response to Arredondo's complaint of discriminatory conduct, Defendants did not interview the Caucasian individuals involved in the Drug Deal.

44. In response to Arredondo's complaint of discriminatory conduct, Defendants did not interview witnesses.

45. In response to Arredondo's complaint of discriminatory conduct, Defendants did not get a written statement from Arredondo.

46. In response to Arredondo's complaint of discriminatory conduct, Defendants did not get a written statement from the Caucasian individuals involved in the Drug Deal.

47. In response to Arredondo's complaint of discriminatory conduct, Defendants did not get a written statement from witnesses.

48. In response to Arredondo's complaint of discriminatory conduct, Defendants did not take corrective action against the Caucasian individuals involved in the Drug Deal.

49. Defendants ratified the discriminatory conduct from the Caucasian individuals involved in the Drug Deal toward Arredondo in failing to conduct an investigation into Arredondo's discrimination complaint.

50. Defendants ratified the discriminatory conduct of the Caucasian individuals involved in the Drug Deal toward Arredondo in failing to discipline the Caucasian individuals involved in the Drug Deal following Arredondo's complaint of discrimination.

51. Following Arredondo's complaint regarding the Caucasian individuals involved in the Drug Deal, Beer Barrel moved Arredondo from dishwasher to doughmaker.

52. During all material events asserted herein, Swihart was Arredondo's supervisor.

53. Swiart is Caucasian.

54. During all material events asserted herein, Swihart had authority to hire, fire, and/or discipline employees.

55. Swihart would double check Arredondo's tickets.

56. The tickets were used to provide the order to those working in the kitchen.

57. Swihart would double check Arredondo's tickets to increase the opportunities to discipline Arredondo.

58. Swihart would not double check the tickets of the Caucasian employees.

59. Swihart would not double check the tickets of individuals who had not made protected complaints.

60. Swihart double checked Arredondo's tickets because of his race.

61. Swihart double checked Arredondo's tickets in retaliation for his protected complaint.

62. On or about March 8, 2020, Defendants suspended Arredondo for making a minor mistake when he added toppings to a pizza where a server missed adding the toppings to the ticket.

63. Arredondo meant to fix the server's error on the ticket but got busy with other work assigned by Swihart.

64. Arredondo would have fixed the mistake before it became a problem but for Swihart double checking his tickets.

65. Defendants suspended Arredondo's employment because of his race.

66. Defendants suspended Arredondo's employment for conduct where they would not suspend the employment of a non-Hispanice employee.

67. Defendants suspended Arredondo's employment in retaliation for his protected complaints.

68. Defendants suspended Arredondo's employment for conduct where they would not suspend the employment of individuals who have not made protected complaints.

69. When Defendants suspended Arredondo's employment, they alleged that Arrendond put additional toppings on food that Arredondo himself had ordered but had not paid for.

70. Defendants did not suspend and/or discipline similarly situated Caucasian employees putting additional toppings on food that the employee himself ordered but had not paid for.

71. During all material events asserted herein, Defendants employed Wayne Sparks as a dishwasher.

72. Sparks is Caucasian.

73. Sparks would often prepare food he himself ordered, and would put on additional toppings that he did not pay for.

74. Defendants became aware that Sparks would often prepare food he himself ordered, and would put on additional toppings that he did not pay for.

75. Defendants did not discipline Sparks for conduct where it allegedly disciplined Arredondo.

76. Defendants did not discipline Sparks for conduct where it disciplined Arredondo because of Arredondo's race and/or national origin.

77. Arredondo made a Facebook post following his suspension voicing his displeasure at being suspended and treated unfairly.

78. During all material events asserted herein, Jim Fowler was the Kitchen Manager.

79. Fowler is Caucasian.

80. As the Kitchen Manager, Fowler has and/or had authority to hire, fire, and/or discipline employees.

81. Fowler called Arredondo on March 9, 2020 and advised Arredondo that someone from corporate alerted him to Arredondo's Facebook post.

82. On March 9, 2020, Fowler told Arredondo that Arredondo's Facebook post violated Beer Barrel's policies.

83. Fowler called Arredondo again on March 10, 2020.

84. On March 10, 2020, Fowler told Arredondo that Defendants were terminating Arredondo's employment.

85. Fowler did not provide a reason for why Defendants were terminating Arredondo's employment.

86. Upon information and belief, Fowler was involved in the decision to terminate Arredondo's employment.

87. Upon information and belief, Swihart was involved in the decision to terminate Arredondo's employment.

88. During all material events asserted herein, Dustin Rice was a cook for Defendants.

89. Rice is Caucasian.

90. During all material events asserted herein, Rice would make posts on Facebook complaining about managers.

91. Rice made a post on Facebook on the day after Defendants terminated Arredondo's employment where Rice complained about Defendants.

92. Upon information and belief, Defendants did not take any corrective action against Rice for his posts on Facebook about Defendants.

93. During all material events asserted herein, Defendants employed Roy Lopez as a cook.

94. Lopez is Hispanic.

95. Defendants terminated Lopez's employment within close proximity of when Defendants terminated Arredondo's employment.

96. Defendants alleged to have terminated Lopez's employment for putting additional toppings on food that he himself prepared, but had not paid for.

97. Defendants terminated Lopez's employment for the same conduct it disciplined Arredondo, but where they had not disciplined a similarly situated, non-Hispanic individual.

98. Defendants have a pattern and/or practice of discriminating against Hispanic employees.

99. Defendants terminated Arredondo's employment where they have not terminated the employment of non-Hispanic employees.

100. Defendants treated Arredondo less favorably than similarly-situated non-Hispanic employees.

101. Defendants terminated Arredondo because of his race.

102. Defendants terminated Arredondo in retaliation for making protected complaints.

## COUNT I: RACE DISCRIMINATION IN VIOLATION OF 42 U.S.C. 2000e-2 *et seq*.

103. Arredondo restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

104. Throughout his employment, Arredondo was fully competent to perform his essential job duties.

105. Defendants treated Arredondo differently than other similarly situated employees based on his race.

106. Defendants violated 42 U.S.C. 2000e-2 *et seq.* by discriminating against Arredondo due to his race.

107. Defendants have a pattern and/or practice of disciplining and/or terminating the employment of Hispanic employees where they do not discipline and or terminate the employment of similarly situated Caucasian employees.

108. Defendants terminated Arredondo's employment without just cause.

109. At all times material herein, similarly situated non-Hispanic employees were not terminated without just cause.

110. Defendants terminated Arredondo's employment where they would not terminate the employment of a non-Hispanic individual.

111. Defendants terminated Arredondo's employment based on his race.

112. Defendants violated 42 U.S.C. 2000e-2 *et seq*. when they terminated Arredondo's employment based on his race.

113. Arredondo suffered emotional distress as a result of Defendants' conduct, and is entitled emotional distress damages pursuant to 42 U.S.C. 2000e-2 *et seq*.

114. As a direct and proximate result of Defendants' conduct, Arredondo has suffered and will continue to suffer damages, including economic and emotional distress damages.

## **COUNT II: RACE DISCRIMINATION IN VIOLATION OF R.C. § 4112.01 *et seq*.**

115. Arredondo restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

116. Throughout his employment, Arredondo was fully competent to perform his essential job duties.

117. Defendants treated Arredondo differently than other similarly situated employees based on his race.

118. Defendants violated R.C. § 4112.01 *et seq.* by discriminating against Arredondo due to his race.

119. Defendants have a pattern and/or practice of disciplining and/or terminating the employment of Hispanic employees where they do not discipline and or terminate the employment of similarly situated Caucasian employees

120. Defendants terminated Arredondo's employment without just cause.

121. At all times material herein, similarly situated non-Hispanic employees were not terminated without just cause.

122. Defendants terminated Arredondo's employment where they would not terminate the employment of a non-Hispanic individual.

123. Defendants terminated Arredondo's employment based on his race.

124. Defendants violated R.C. § 4112.01 *et seq*. when they terminated Arredondo's employment based on his race.

125. Arredondo suffered emotional distress as a result of Defendants' conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

126. As a direct and proximate result of Defendants' conduct, Arredondo has suffered and will continue to suffer damages, including economic and emotional distress damages.

## COUNT III: RETALIATION IN VIOLATION OF 42 U.S.C. 2000e-2 *et seq*.

127. Arredondo restates each and every prior paragraph of this complaint, as if it were fully restated herein.

128. As a result of the Defendants' discriminatory conduct described above, Arredondo complained about the race discrimination he was experiencing.

129. Subsequent to Arredondo's reporting of race discrimination, the harassment he suffered increased.

130. Subsequent to Arredondo's reporting of race discrimination, Defendants failed to conduct an investigation into his complaints.

131. Subsequent to Arredondo's reporting of race discrimination, Defendants failed to take corrective action regarding his complaints.

132. Subsequent to Arredondo's reporting of race discrimination, Defendants terminated Arredondo's employment.

133. Subsequent to Arredondo's reporting of race discrimination, Defendants terminated Arredondo's employment for conduct where they have not terminated the employment of individuals who have not made protected complaints.

134. Defendants' actions were retaliatory in nature based on Arredondo's opposition to the unlawful discriminatory conduct.

135. Pursuant to 42 U.S.C. 2000e-2 *et seq*., it is an unlawful discriminatory practice "o discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice.

136. Arredondo suffered emotional distress as a result of Defendants' conduct, and is entitled emotional distress damages pursuant to 42 U.S.C. 2000e-2 *et seq*.

137. As a direct and proximate result of Defendant's retaliatory discrimination against and termination of Arredondo, he suffered and will continue to suffer damages, including economic and emotional distress damages.

### COUNT IV:  RETALIATION IN VIOLATION OF R.C. § 4112.02(I)

138. Arredondo restates each and every prior paragraph of this complaint, as if it were fully restated herein.

139. As a result of the Defendants' discriminatory conduct described above, Arredondo complained about the race discrimination he was experiencing.

140. Subsequent to Arredondo's reporting of race discrimination, the harassment he suffered increased.

141. Subsequent to Arredondo's reporting of race discrimination, Defendants failed to conduct an investigation into his complaints.

142. Subsequent to Arredondo's reporting of race discrimination, Defendants failed to take corrective action regarding his complaints.

143. Subsequent to Arredondo's reporting of race discrimination, Defendants terminated Arredondo's employment.

144. Subsequent to Arredondo's reporting of race discrimination, Defendants terminated Arredondo's employment for conduct where they have not terminated the employment of individuals who have not made protected complaints.

145. Defendants' actions were retaliatory in nature based on Arredondo's opposition to the unlawful discriminatory conduct.

146. Pursuant to R.C. § 4112.02(I), it is an unlawful discriminatory practice "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section…"

147. Arredondo suffered emotional distress as a result of Defendants' conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

148. As a direct and proximate result of Defendant's retaliatory discrimination against and termination of Arredondo, he suffered and will continue to suffer damages, including economic and emotional distress damages.

## DEMAND FOR RELIEF

WHEREFORE, Arredondo demands from Defendants the following:

(a) Issue an order requiring Beer Barrel to restore Arredondo to one of the positions to which he was entitled by virtue of his application and qualifications, and expunge his personnel file of all negative documentation;

(b) An award against each Defendant of compensatory and monetary damages to compensate Arredondo for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $ 25,000 per claim to be proven at trial;

(c) An award of punitive damages against each Defendant in an amount in excess of $ 25,000;

(d) An award of reasonable attorneys' fees and non-taxable costs for Arredondo's claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

/s/ *Daniel S. Dubow*
Brian D. Spitz (0068816)
Daniel S. Dubow (0095530)
**THE SPITZ LAW FIRM, LLC**
25200 Chagrin Boulevard, Suite 200
Beachwood, OH 44122
Phone: (216) 291-4744
Fax: (216) 291-5744
Email:  brian.spitz@spitzlawfirm.com
           daniel.dubow@spitzlawfirm.com

*Attorneys For Plaintiff*

## JURY DEMAND

Plaintiff Corey Arredondo demands a trial by jury by the maximum number of jurors permitted.

/s/ *Daniel S. Dubow*
Brian D. Spitz (0068816)
Daniel S. Dubow (0095530)
**THE SPITZ LAW FIRM, LLC**